IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROLLY PUGAL, an individual; and MARY ANN PUGAL, an individual, | ) ) ) ) | CIVIL NO. 11-00054 SOM/KSC |
| Plaintiffs, | ) ) ) | ORDER GRANTING DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS' MOTION TO DISMISS COMPLAINT |
| vs. | ) ) | |
| ASC (America's Servicing Company); FREMONT INVESTMENT AND LOAN, a business entity, form unknown; MAUI MORTGAGE EXPRESS, INC., a business entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a business entity, form unknown, and DOES 1-100 inclusive, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER GRANTING DEFENDANT MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS' MOTION TO DISMISS COMPLAINT

I.      INTRODUCTION.

        On January 21, 2011, pro se Plaintiffs Rolly and Mary

Ann Pugal filed this action against Defendants America's

Servicing Company, Fremont Investment and Loan, Maui Mortgage

Express, Inc., and Mortgage Electronic Registration Systems

("MERS").  The Pugals assert federal and state law claims arising

from a September 10, 2005, mortgage transaction concerning real

property on the island of Maui.

        The Pugals used a "form" complaint that this court is

very familiar with.  At the hearing on the motion, Rolly Pugal

indicated that he and his wife paid Francha Services, LLC, and/or Richard W. Guidotti $4,000 for the Complaint and a "forensic audit" of their loan attached to the Complaint. These documents appear to have been prepared by Francha and/or Guidotti for the Pugals to file with this court on a pro se basis. The complaint is nearly identical to many other complaints that appear to have been prepared by Francha that have been dismissed by this court. The Complaint seeks declaratory and injunctive relief, as well as damages and rescission of the mortgage transaction. MERS seeks dismissal of all counts against it.[1]

For the reasons set forth in this order, the court GRANTS MERS's motion and dismisses the Complaint with leave to amend as to certain counts as set forth in this order. Given obvious pleading defects applicable to all other Defendants, as well as Rolly Pugal's stated acquiescence at the hearing with

---

[1]At the hearing on the motion, Rolly Pugal indicated that he has been attempting to contact Francha for further help, but that Francha is not returning his calls. If Rolly Pugal's comments were intended to suggest that Francha and/or Guidotti have failed to provide what was promised, or that the Pugals seek a remedy in this court with respect to that subject, the court responds by noting that the Pugal's Complaint does not include any claims against Francha and/or Guidotti. The court is not here recommending that this lawsuit be expanded to include such claims. Instead, the Pugals may wish to consider seeking assistance with respect to what they paid to Franca and/or Guidotti from various government agencies, including but not limited to the State of Hawaii Office of Consumer Protection, reachable by mail at 234 South Beretania Street, Room 801, Honolulu Hawaii, 96813, or by phone at (808) 586-2630.

respect to the untimeliness of some claims, the court also <u>sua sponte</u> dismisses all claims against nonmoving Defendants.

II.      <u>STANDARD OF REVIEW.</u>

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Marcus v. Holder</u>, 574 F.3d 1182, 1184 (9th Cir. 2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

III.     <u>FACTUAL BACKGROUND.</u>

The court assumes the Complaint's factual allegations are true for purposes of this motion. <u>See, e.g.</u>, <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

According to the Complaint, the Pugals entered into a loan repayment and security agreement with Maui Mortgage Express, Inc., "on or about September 10, 2005." <u>See</u> Complaint ¶ 2, ECF No. 1, Jan. 21, 2011. Plaintiffs allege that they obtained a 30-year loan of $571,500 with a fixed mortgage rate of 6.75%. <u>Id.</u> It appears that Fremont Investment and Loan serviced the loan. <u>See</u> <u>id.</u> ¶ 20. MERS is alleged to be the "beneficiary for the loan." <u>Id.</u> ¶ 113. The Complaint alleges that "MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record." <u>Id.</u> This allegation is basically consistent with the Ninth Circuit's recent explanation of how MERS operates. <u>See</u> <u>Cervantes v. Countrywide Home Loans</u>, __ F.3d __, 2011 WL 3911031 (9th Cir. Sept. 7, 2011). For purposes of this motion, the court does not rely on the facts set forth in <u>Cervantes</u>, but simply notes the existence of the opinion to provide general background.

The Pugals assert, among other things, that (1) the terms of the transaction were not clear and Defendants never

explained the transaction to them, <u>id.</u> ¶ 29; (2) the loan was more expensive than alternative financing arrangements they qualified for, <u>id.</u> ¶ 22; and (3) Defendants charged excessive or illegal fees.  <u>Id.</u> ¶ 31.[2]  The Complaint asserts twelve separate counts:  (1) Declaratory Relief; (2) Injunctive Relief; (3) Contractual Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violations of the Truth in Lending Act ("TILA"); (5) Violations of the Real Estate Settlement Practices Act ("RESPA"); (6) Rescission; (7) Unfair and Deceptive Acts and Practices ("UDAP"); (8) Breach of Fiduciary Duty; (9) Unconscionability; (10) Predatory Lending; (11) Quiet Title; and (12) Lack of Standing (MERS).[3]

---

[2] The Complaint often fails to distinguish among Defendants as to alleged causes of action.  To provide proper notice, any Amended Complaint should allege necessary facts against specific Defendants, i.e., it should tie each claim to one or more specific Defendants and explain how each Defendant is liable.

[3] The Complaint also mentions the Equal Opportunity Credit Act, Complaint ¶ 12; the "Fair Lending/Fair Debt Collection Act," <u>id.</u>; the Federal Trade Commission Act, <u>id.</u> ¶ 40, and fraudulent concealment, <u>id.</u> ¶ 77.  The Pugals, however, assert no claims for relief (i.e., no counts) for any such alleged violations, and therefore fail to state a claim for such alleged violations. <u>Cf.</u> <u>Bautista v. Los Angeles Cnty.</u>, 216 F.3d 837, 840-41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).  The court further notes that the "fraudulent concealment" mentioned in paragraph 77 is not pled with the required specificity.  <u>See</u> Fed. R. Civ. P. 9(b) (requiring a party asserting fraud to "state with particularity the circumstances constituting fraud"); <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by the who, what, when,

On July 11, 2011, MERS filed the present Motion, seeking dismissal of all counts.  See ECF No. 18.  The Pugals did not file an Opposition to the motion, but were given a chance to oppose the motion orally at the hearing held on September 14, 2011.  At that hearing, Rolly Pugal acquiesced in the present dismissal.  For the reasons set forth below, the court grants the motion.

IV.     ANALYSIS.

The Pugals have submitted a "form" Complaint that asserts claims that are nearly identical to claims asserted in many other cases filed in this court.  The Complaint attaches a "Forensic Audit Report" by Francha Services, LLC.  This court notes that it has addressed the same claims on many occasions, although there are also numerous other cases based on "form" complaints that this court has not yet addressed in orders.  See, e.g., Caniadido v. MortgageIT, LLC, 2011 WL 3837265 (D. Haw. Aug. 26, 2011); Ramos v. Chase Home Fin., 2011 WL 3793346 (D. Haw. Aug. 25, 2011); Gambing v. OneWest Bank, 2011 WL 2940318 (D. Haw. July 18, 2011); Kelly v. Bank of Am., 2011 WL 2493048 (D. Haw. June 22, 2011); Campollo v. Bank of Am., 2011 WL 2457674 (D. Haw. June 16, 2011); Balagso v. Aurora Loan Servs., LLC, 2011 WL 2133709 (D. Haw. May 26, 2011); Casino v. Bank of Am., 2011 WL

where, and how of the misconduct charged." (internal quotations omitted)).

1704100 (D. Haw. May 4, 2011); <u>Asao v. Citi Mortgage</u>, Civ. No.
10-00553 SOM/KSC, ECF No. 50 (D. Haw. Apr. 28, 2011); <u>Badua v.
Fremont Inv. & Loan</u>, Civ. No. 10-00580 DAE/BMK, ECF No. 45 (D.
Haw. Apr. 20, 2011); <u>Hoilien v. Bank of Am.</u>, Civ. No. 10-00712
JMS/BMK, 2011 WL 976699 (D. Haw. Mar. 17, 2011); <u>Marzan v. Bank
of Am.</u>, 2011 WL 915574 (D. Haw. Mar. 10, 2011); <u>Sakugawa v.
Countrywide Bank F.S.B.</u>, 2011 WL 572528 (D. Haw. Feb. 14, 2011);
<u>Gorospe v. Security Natl. Mortgage</u>, 2011 WL 578844 (D. Haw. Feb.
8, 2011); <u>Mier v. Lordsman Inc.</u>, Civ. No. 10-00584 JMS-KSC, 2011
WL 285862 (D. Haw. Jan. 27, 2011); <u>Phillips et al. v. Bank of
Am.</u>, 2011 WL 240813 (D. Haw. Jan. 21, 2011); <u>Sakugawa v. Indymac
Bank, FSB</u>, Civ. No. 10-00504 JMS/LEK, ECF No. 15 (D. Haw. Nov.
24, 2010).  The court draws extensively from those orders.

> A.  Counts I and II (Declaratory and Injunctive
>     Relief).

MERS contends that Count I (Declaratory Relief) and
Count II (Injunctive Relief), as pled, fail to state claims upon
which relief can be granted.  The court agrees.

Count I appears to seek relief under the Declaratory
Judgment Act, 28 U.S.C. § 2201.[4]  Count I alleges that "[a]n

---

[4] The Declaratory Judgment Act provides in pertinent part:

a) In a case of actual controversy within its
jurisdiction . . . any court of the United States, upon
the filing of an appropriate pleading, may declare the
rights and other legal relations of any interested
party seeking such declaration, whether or not further
relief is or could be sought.  Any such declaration

actual controversy has arisen and now exists between Plaintiffs
and Defendants regarding their respective rights and duties, in
that Plaintiffs contend[] that Defendants did not have the right
to foreclose on the Subject Property[.]" Complaint ¶ 43. The
Pugals ask the court to declare that "the purported power of sale
contained in the Loan [is] of no force and effect at this time"
because of "numerous violations of State and Federal laws
designed to protect borrowers[.]" Id. ¶ 44. The Pugals say, "As
a result of Defendants' actions, Plaintiffs have suffered damages
. . . and seek[] declaratory relief that Defendants' purported
power of sale is void and has no force or effect[.]" Id. ¶ 45.

MERS seeks dismissal of the declaratory relief claim
asserted in Count 1, arguing that the respective statutes of
limitations for the state and federal laws on which the claim is
based have run. As discussed below with respect to the
substantive counts, this court agrees that the applicable
statutes of limitations have run. However, the court dismisses
the declaratory relief claim on a more fundamental level because,
as alleged in the Complaint, it is not cognizable as an
independent cause of action. See Seattle Audubon Soc. v.
Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory

---

        shall have the force and effect of a final judgment or
        decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." (citation and quotation signals omitted)).  Because the Pugals' declaratory relief claim is based on allegations regarding Defendants' past wrongs, their claim under the Declaratory Relief Act is improper and essentially duplicates their other causes of action.  See, e.g., Ballard v. Chase Bank USA, NA, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (citation omitted); Ruiz v. Mortg. Elec. Registration Sys., Inc., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment when foreclosure had already occurred and the plaintiff was seeking "to redress past wrongs"); Edejer v. DHI Mortg. Co., 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights."); Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.").

With respect to Count II, the court agrees with MERS that a claim for "injunctive relief" standing alone is not a cause of action.  See, e.g., Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action"); Henke v. Arco Midcon, L.L.C., 2010 WL 4513301, at *6 (E.D. Mo. Nov. 2, 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); Plan Pros, Inc. v. Zych, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same).  Injunctive relief may be available if the Pugals are entitled to such a remedy on an independent cause of action.

Accordingly, the court DISMISSES Counts I and II without leave to amend.  If the Pugals eventually prevail on an independent claim, the court will necessarily render a judgment setting forth (i.e., "declaring") as much and providing appropriate remedies.  Similarly, if injunctive relief is proper, it will be because the Pugals have prevailed (or have met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure) on an independent cause of action.  Although only MERS has moved to dismiss, the dismissal of Counts I and II is as to all Defendants because the Pugals cannot prevail on Count I or II as to any Defendant.  See Omar v. Sea-Land Serv.

Inc., 813 F.2d 986, 991 (9th Cir. 1987) (stating that a "trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6). . . . Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

        B.    Count III (Covenant of Good Faith and Fair Dealing).

Count III asserts a claim for "Contractual Breach of Implied Covenant of Good Faith and Fair Dealing." The Pugals allege that every contract imposes a duty of good faith and fair dealing "in its performance and its enforcement," Complaint ¶ 56, and that Defendants "willfully breached their implied covenant of good faith and fair dealing" by engaging in the acts alleged in the Complaint (such as withholding disclosures or information, and "willfully plac[ing] Plaintiffs in a loan that [they] did not qualify for"). Id. ¶ 55.

This claim in essence asserts the tort of "bad faith." See Best Place v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). Although bad faith is an accepted tort when a plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based on a mortgage loan contract. To the contrary, the Hawaii Supreme Court has refused to extend the tort to a claim of a breach of an employment contract and, in so doing, used language indicating that it would be unlikely to

11

extend it to a breach of a mortgage loan contract.  See Francis
v. Lee Enterprises, Inc., 89 Haw. 234, 238, 971 P.2d 707, 711
(1999) ("[o]ther jurisdictions recognizing the tort of bad faith
. . . limit such claims to the insurance context or situations
involving special relationships characterized by elements of
fiduciary responsibility, public interest, and adhesion.");
accord Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.,
459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).  The Pugals thus do
not properly plead an independent claim of bad faith.

        Even assuming a bad faith tort were cognizable outside
the insurance context, "[a] party cannot breach the covenant of
good faith and fair dealing before a contract is formed."
Contreras v. Master Fin., Inc., 2011 WL 32513, at *3 (D. Nev.
Jan. 4, 2011) (citing Indep. Order of Foresters v. Donald, Lufkin
& Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied
covenant relates only to the performance under an extant
contract, and not to any pre-contract conduct.")).  Hawaii
follows this distinction.  See Young v. Allstate Ins. Co., 119
Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating that the
covenant of good faith does not extend to activities occurring
before consummation of an insurance contract).  All of Count
III's allegations concern precontract activities (failing to
disclose terms, failing to conduct proper underwriting, making an
improper loan).  Defendants cannot be liable for breaching a

contract covenant when no contract existed.  See id.; see also
Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D.
Nev. 2009) ("Because Plaintiffs' claim revolves entirely around
alleged misrepresentations made before the [mortgage loan]
contract was entered into, [the bad faith claim] fails as a
matter of law.").

Even if the Pugals were attempting to assert bad faith
in the performance of a contractual right to foreclose, "a court
should not conclude that a foreclosure conducted in accordance
with the terms of a deed of trust constitutes a breach of the
implied covenant of good faith and fair dealing."  Davenport v.
Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal.
2010) (citation omitted).  "The covenant [of good faith] does not
'impose any affirmative duty of moderation in the enforcement of
legal rights.'"  Id. (quoting Price v. Wells Fargo Bank, 213 Cal.
App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).

Accordingly, Count III is DISMISSED.  Because further
amendment would be futile, dismissal of Count III is without
leave to amend.  This dismissal is as to all Defendants.  See
Omar, 813 F.2d at 991.

C.   Count IV (TILA).

Count IV asserts violations of TILA.  It specifically
alleges that Maui Mortgage Express and Fremont Investment
violated TILA by failing to issue TILA disclosures.  See

13

Complaint ¶ 60.  Although Count IV is asserted against all Defendants, it is unclear how MERS allegedly violated TILA.  For that reason, Count IV fails to meet the minimal pleading standard with respect to any claim against MERS.

Even if a viable claim were asserted against MERS, the court agrees with MERS that any TILA damages and rescission claims would be time-barred.  Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Furthermore, TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]"  15 U.S.C. § 1635(a).  If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).  Because Plaintiffs allege that they consummated their loan on or about September 10, 2005, <u>see</u> Complaint ¶ 2, the respective TILA statutes of limitations ran long before the Complaint was filed on January 21, 2011.

The court notes that Plaintiffs allege in paragraph 62 of their Complaint that the statute of limitations for their TILA

claim should be equitably tolled.  That bald conclusion without factual support or any plausible argument is insufficient to prevent the granting of MERS' motion on limitations grounds.  At best, Plaintiffs argue that the limitation period should not apply because the lenders failed to provide them with the required disclosures and notices.  Given MERS's motion, Plaintiffs had the burden of explaining how that alleged failure should extend the explicit limitation period set forth in § 1635(f), which gives Plaintiffs three years to bring a TILA claim when required disclosures are not provided.  <u>See</u> <u>Cervantes</u>, __ F.3d __, 2011 WL 3911031, *8 (rejecting equitable tolling argument when Plaintiffs failed to allege circumstances beyond their control that prevented them from discovering claim; applying one-year TILA limitation period because the period began to run when the plaintiffs executed their loan documents and could have discovered alleged disclosure violations); <u>Hubbard v. Fidelity Fed. Bank</u>, 91 F.3d 75, 79 (9th Cir. 1996) (rejecting a tolling argument because "nothing prevented Hubbard from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements").  Plaintiffs do not meet that burden.

This court recognizes that a statute of limitations defense is an affirmative defense that a defendant has the burden of establishing.  <u>See</u> Fed. R. Civ. Pro. 8(c); <u>Jones v. Bock</u>, 549

U.S. 199, 214-15 (2007) (noting in the course of examining a requirement that prisoners exhaust administrative remedies before filing suit that, even though "the complaint is subject to dismissal for failure to state a claim" because the "allegations . . . show that relief is barred by the applicable statute of limitations, . . . that does not make the statute of limitations any less an affirmative defense").  In this case, MERS has raised the statute of limitations as an affirmative defense in its motion to dismiss, pointing to the allegations of the Complaint itself as making it clear that the TILA claim is untimely.  The Ninth Circuit notes, "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the fact of the complaint."  <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010) (quotations and citations omitted).  As the Complaint evidences a timeliness problem that MERS's motion has raised, and as the Pugals have not responded to this issue, the court relies on the limitation ground as an additional basis for dismissal of the TILA claim against MERS.

Because untimeliness is an affirmative defense that the other Defendants have the burden of establishing, the court would not normally dismiss the TILA claims against the other Defendants at this time.  However, at the hearing, Rolly Pugal did not

oppose dismissal of those claims and failed to identify any reason why the claim should be tolled as to any Defendant.  He instead asked that he be allowed to file an Amended Complaint. Given his failure to oppose the dismissal of the TILA claims as to all Defendants, the court dismisses the TILA claims as to all Defendants.  Because the statute of limitations has run for the TILA claims asserted in the Complaint, the Pugals may not reassert those same claims in any Amended Complaint they file.

       D.   <u>Count V (RESPA)</u>.

Count V alleges a violation of RESPA.  Specifically, the Complaint alleges that the Pugals paid "egregious" fees in connection with their loan.  Complaint ¶ 72.  The Complaint alleges that Plaintiffs were never properly provided a "HUD-1." <u>Id.</u> ¶ 73.  Finally, the Complaint alleges that Defendants did not disclose "all affiliated business arrangements."

To the extent that the Pugals may be asserting claims for violations of 12 U.S.C. §§ 2603 or 2604 for failure to provide a "good faith estimate" or "uniform settlement statement," those claims fail because there is no private cause of action for a violation of those sections.  <u>See</u> <u>Martinez v. Wells Fargo Home Mortg., Inc.</u>, 598 F.3d 549, 557 (9th Cir. 2010).

To the extent the Pugals are asserting a RESPA claim under 12 U.S.C. § 2607, for illegal fees or "egregious" fees at closing, that claim under RESPA fails because § 2607 does not

17

prohibit "excessive" fees.  <u>See</u> <u>Martinez v. Wells Fargo Home</u>
<u>Mortg., Inc.</u>, 598 F.3d 549, 554 (9th Cir. 2010) (concluding that
§ 2607 "cannot be read to prohibit charging fees, excessive or
otherwise, when those fees are for services that were actually
performed").

As for other RESPA claims not falling under §§ 2603,
2604, or 2607, if any, the Pugals fail to state which Defendants
allegedly violated which provisions of RESPA.  Those claims, if
any, are too vague to state a claim for relief.

MERS argues that the RESPA claim is also time-barred.
The court agrees.  The statute of limitations for a RESPA claim
is either one or three years from the date of the violation,
depending on the type of violation.  <u>See</u> 12 U.S.C. § 2614.  As
with the TILA claim, the Complaint evidences a timeliness problem
with the RESPA claim that MERS's motion has raised.  The court
relies on the limitation ground as an additional basis for
dismissal of the RESPA claim against MERS.

However, recognizing that untimeliness is an
affirmative defense that the other Defendants have the burden of
establishing, the court does not here rely on the limitation
period as an additional ground for dismissal of the RESPA claim
made against other Defendants.  Nevertheless, the court DISMISSES
the RESPA claim without leave to amend as to (1) any claim under
§ 2607 asserting that a fee was "excessive" or otherwise for

18

services that were actually performed, or (2) any claim under §§ 2603 or 2604.  Allowing amendments on those matters as to any Defendant would be futile.  See Martinez, 598 F.3d at 554, 557.

Because MERS has demonstrated that the statute of limitations has run for the RESPA claims asserted in the Complaint, the Pugals may not reassert those same claims against MERS in any Amended Complaint they file.  However, the Pugals are granted leave to amend Count V against the other Defendants. They may also amend Count V as to MERS if they are asserting RESPA claims not asserted in the present Complaint.  See Omar, 813 F.2d at 991.  The Pugals may want to consider whether any RESPA claim is time-barred before reasserting such a claim.

E.    Count VI (Rescission).

Count VI asserts that "Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief."  Complaint ¶ 77. As the court noted with respect to the remedies sought in Counts I and II, the remedy sought in Count VI (rescission) "is only a remedy, not a cause of action."  Bischoff v. Cook, 118 Haw. 154, 163, 185 P.3d 902, 911 (Haw. App. 2008).  The remedy thus "rises or falls with [the] other claims."  Ballard, 2010 WL 5114952, at *8.  Indeed, as alleged here, Count VI specifically acknowledges

that it is seeking rescission based upon "independent grounds for relief." Complaint ¶ 77.

Accordingly, Count VI is DISMISSED without leave to amend. The court will address the merits of rescission when addressing any independent claim allowing rescission. The dismissal is as to all Defendants. See Omar, 813 F.2d at 991.

> F.    Count VII (Unfair and Deceptive Acts and Practices).

Count VII alleges that all Defendants are liable for Unfair and Deceptive Acts and Practices "by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of her [sic] home, equity, as well as their past and future investment." Complaint ¶ 84. Basically, the Pugals allege that Defendants as lenders "failed to undergo a diligent underwriting process," "failed to properly adjust and disclose facts," should not have approved the loan because the Pugals could not afford it, and had "knowledge of these facts, circumstances and risks but failed to disclose them." Id. ¶ 82. Count VII appears to be brought under section 480-2(a) of Hawaii Revised Statutes, which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

The Pugals do not allege a viable claim under section 480-2 of the Hawaii Revised Statutes because "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even

20

where there was a foreseeable risk borrowers would be unable to repay.'" McCarty v. GCP Management, LLC, 2010 WL 4812763 *6 (D. Haw. Nov. 17, 2010) (quoting Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)). See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (quoting Renteria v. United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) (finding that borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan")).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. App. 1991). Nothing in the Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." The claim fails on that basis alone. The court, however, cannot conclude at this time that further amendment is futile and allows the Pugals an opportunity to amend Count VII to attempt to state a section 480-2 claim.

MERS also argues that this claim is barred by the applicable four-year statute of limitations. <u>See</u> Haw. Rev. Stat. § 480-24(a) (barring a chapter 480 claim "unless commenced within four years after the cause of action accrues"). As with the TILA and RESPA claims, the Complaint evidences a timeliness problem with the chapter 480 claim that MERS's motion has raised. As the Pugals have not responded to this issue, the court relies on the limitation ground as an additional basis for dismissal of the chapter 480 claim against MERS. However, as with the TILA and RESPA claims, the court is dismissing the chapter 480 claim against other Defendants <u>sua</u> <u>sponte</u>. Again in recognition of untimeliness as an affirmative defense that they have the burden of establishing, the court does not here rely on the limitation period as an additional ground for dismissal of the chapter 480 claim made against Defendants other than MERS.

Count VII is DISMISSED with leave to amend as to all Defendants. <u>See</u> <u>Omar</u>, 813 F.2d at 991. Of course, in filing an Amended Complaint, the Pugals may not reassert the same claims against MERS, as those claims are barred by the applicable statute of limitations. Also, the Pugals should consider the applicable statute of limitation in deciding whether to reassert a chapter 480 claim against other Defendants in any Amended Complaint.

G.   <u>Count VIII (Breach of Fiduciary Duty).</u>

Count VIII alleges, without distinguishing between various Defendants, that Defendants owed the Pugals a fiduciary duty and breached that duty by failing "to advise or notify Plaintiffs . . . that Plaintiffs would or had a likelihood of defaulting on the loan." Complaint ¶ 87. Defendants also allegedly breached a fiduciary duty by "exercis[ing] a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another[.]" <u>Id.</u> ¶ 88. The Complaint also alleges that failure to provide material disclosures "while in the capacity of Plaintiff's Lender" and "fail[ure] to fully comply with TILA and RESPA . . . are violations of a fiduciary responsibility owed to Plaintiff by Defendants." <u>Id.</u> ¶¶ 89-90.

These allegations fail to state a claim against any Defendant. As noted earlier with respect to the UDAP claim asserted in Count VII, <u>McCarty</u> held that a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers. <u>See, e.g.,</u> <u>Spencer v. DHI Mortg. Co.</u>, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting <u>Oaks Mgmt. Corp. v. Super. Ct.</u>, 51 Cal. Rptr. 3d 561 (Cal. App. 2006)); <u>Ellipso, Inc. v. Mann</u>, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship

. . . and is not fiduciary in nature.")
(citation omitted); <u>Nymark v. Heart Fed. Sav.</u>
<u>& Loan Ass'n</u>, 283 Cal. Rptr. 53, 54 n.1 (Cal.
App. 1991) ("The relationship between a
lending institution and its borrower-client
is not fiduciary in nature.").

<u>McCarty</u>, 2010 WL 4812763, at *5.

Count VIII is DISMISSED with leave to amend as to all
Defendants.

      H.   <u>Count IX (Unconscionability).</u>

Count IX asserts "Unconscionability-UCC-2-3202 (sic
2-302)." Count IX further asserts that courts may refuse to
enforce a contract or portions of a contract that are
unconscionable, Complaint ¶ 92, and should give parties an
opportunity to present evidence regarding a contract's
"commercial setting, purpose and effect" to determine if a
contract is unconscionable. <u>Id.</u> ¶ 93. It goes on to allege:

> Here, based on the deception, unfair
> bargaining position, lack of adherence to the
> regulations, civil codes and federal
> standards that the Defendants were require[d]
> to follow; coupled with the windfall that the
> Defendants reaped financially from their
> predatory practices upon Plaintiff's [sic],
> the court may find that the loan agreement
> and trust deed are unconscionable and of no
> force or effect.

<u>Id.</u> ¶ 94.

"Unconscionability" is generally a defense to the
enforcement of a contract, not a proper claim for affirmative
relief. <u>See, e.g., Gaitan v. Mortg. Elec. Registration Sys.,</u>

2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009)

("Unconscionability may be raised as a defense in a contract
claim, or as a legal argument in support of some other claim, but
it does not constitute a claim on its own."); see also Barnard v.
Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex.
Oct. 27, 2006) (citing numerous cases for the proposition that
neither the common law nor the Uniform Commercial Code allows
affirmative relief for unconscionability).

     To the extent unconscionability can be addressed
affirmatively as part of a different or independent cause of
action, such a claim "is asserted to prevent the enforcement of a
contract whose terms are unconscionable."  Skaggs v. HSBC Bank
USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010)
(emphasis in original).[5]  Skaggs dismissed a "claim" for
unconscionability because it challenged only conduct such as

---

[5] In Skaggs, the court noted in dicta that "at least one
Hawaii court has addressed unconscionability when raised as a
claim seeking rescission."  2010 WL 5390127, at *3 n.2 (citing
Thompson v. AIG Haw. Ins. Co., 111 Haw. 413, 142 P.3d 277
(2006)).  This was not an indication that one could raise an
affirmative claim for "unconscionability."  Indeed, in Thompson,
the complaint did not assert a separate count for rescission or
unconscionability.  See Thompson, 111 Haw. at 417, 142 P.3d at
281 (indicating that the specific counts were for negligence,
fraud, breach of duty, and unfair and deceptive trade practices
under Haw. Rev. Stat. § 480-2).  In Thompson, the remedy of
rescission was based on an independent claim.  Similarly, a
remedy for an unconscionable contract may be possible; a
stand-alone claim asserting only "unconscionability," however, is
improper.  See, e.g., Gaitan v. Mortg. Elec. Registration Sys.,
2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009).

"obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not the breach of any specific contractual term.  Id.  Count IX similarly fails to identify or challenge any particular contract term as unconscionable.

Count IX is DISMISSED with leave to amend.  This dismissal is as to all Defendants.  See Omar, 813 F.2d at 991.

I.   Count X (Predatory Lending).

Count X asserts "Predatory Lending" and lists a variety of alleged wrongs (e.g., failure to disclose terms and conditions or material facts, targeting of unsophisticated persons, unfair loan terms, and improper underwriting) that form the bases of other causes of action.

The common law does not support a claim for "predatory lending."  See Haidar v. BAC Home Loans Servicing, LP, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); Pham v. Bank of Am., N.A., 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending").  To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in statutes or other common-law causes of action such as fraud.  The term "predatory lending" is otherwise too broad.  See Vissuet v. Indymac Mortg. Servs., 2010

26

WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend and noting that the term is expansive and fails to provide proper notice, leaving defendants "to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); see also Hambrick v. Bear Stearns Residential Mortg., 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending that failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.'").

Count X fails to state a cause of action. This does not, of course, mean that "predatory lending" cannot form the basis of some cause of action. Instead, the dismissal signifies that Hawaii courts have not recognized "predatory lending" itself as a common-law cause of action. The ambiguous term "predatory lending" potentially encompasses a wide variety of alleged wrongdoing. The cause of action pled here fails to provide notice to any Defendant of what is being claimed. See Vissuet, 2010 WL 1031013, at *3.

Count X is DISMISSED with leave to amend as to all Defendants. In any Amended Complaint, the Pugals may attempt to state a cause of action based on specific activities (which might be described as "predatory") provided that any new predatory lending claim is based on a recognized statutory or common-law

theory.  In other words, the Pugals may not simply reallege a
general claim for "predatory lending."

      J.   <u>Count XI (Quiet Title)</u>.

      Count XI alleges that "Defendants have no legal or
equitable right, claim, or interest in the Property," Complaint
¶ 109, and that the Pugals are entitled to a declaration that
"the title to the Subject Property is vested in Plaintiff's [sic]
alone[.]" <u>Id.</u> ¶ 117.

      The Pugals appear to be making a claim under section
669-1(a) of Hawaii Revised Statutes.  That statute provides that
a quiet title "[a]ction may be brought by any person against
another person who claims, or who may claim adversely to the
plaintiff, an estate or interest in real property, for the
purpose of determining the adverse claim."  The Pugals do not
state a cognizable claim for quiet title, as they have not
alleged sufficient facts regarding the interests of various
parties to make out a cognizable claim for "quiet title."
Instead, the Pugals merely allege the elements of section 669-1
without stating a claim.  <u>See Iqbal</u>, 129 S. Ct. at 1949 ("A
pleading that offers 'labels and conclusions' or 'a formulaic
recitation of the elements of a cause of action'" is
insufficient.).

      Count XI is DISMISSED with leave to amend as to all
Defendants.

K.  Count XII (Lack of Standing (MERS)).

Count XII asserts that MERS is an "artificial" entity that was designed to circumvent mortgage recording laws.  See Complaint ¶ 114.  The Complaint alleges that MERS was named the "beneficiary" of the Pugals' loan so that MERS could be the mortgagee of record.  Id. ¶ 113.  Because MERS remained the mortgagee of record, the Pugals say that their loan could be bought and sold by the real owner(s) of the loan, saving subsequent buyers of the loan the trouble and expense of recording their ownership interest in the loan and the trouble of actually transferring the mortgage and note to any new owner.  See id.  This process was recently explained by the Ninth Circuit in Cervantes v. Countrywide Home Loans, __ F.3d __, 2011 WL 3911031, *1 (9ᵗʰ Cir. Sept. 7, 2011) ("MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers.  After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers.  The owner of the beneficial interest is entitled to repayment of the loan.  For simplicity, we will refer to the owner of the beneficial interest as the 'lender.'  The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan.  Many of

the companies that participate in the mortgage industry-—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans—-are members of MERS and pay a fee to use the tracking system.").

The Pugals allege that the assignment of their loan in the name of MERS is "illegal," Complaint ¶ 115, and that MERS has no standing to foreclose on their loan. <u>Id.</u> ¶ 118. The Pugals thus appear to be alleging that MERS may not foreclose on their property, or has improperly foreclosed already, because it is not the holder of their note. <u>See id.</u> ¶ 116. However, Plaintiffs do not allege sufficient facts to support such a claim, as they do not allege that MERS has attempted or is attempting to foreclose on their loan.

Accordingly, Count XII is dismissed with leave to amend. Before the Pugals file an Amended Complaint, they should be guided by <u>Cervantes</u>, as it has a discussion of who may foreclose on a loan involving MERS:

> In the event of a default on the loan, the lender may initiate foreclosure in its own name, or may appoint a trustee to initiate foreclosure on the lender's behalf. However, to have the legal power to foreclose, the trustee must have authority to act as the holder, or agent of the holder, of both the deed and the note together. . . . The deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment. . . . Conversely, the holder of the deed alone does not have a

right to repayment and, thus, does not have
an interest in foreclosing on the property to
satisfy repayment. . . . One of the main
premises of the plaintiffs' lawsuit here is
that the MERS system impermissibly "splits"
the note and deed by facilitating the
transfer of the beneficial interest in the
loan among lenders while maintaining MERS as
the nominal holder of the deed.

The plaintiffs' lawsuit is also premised on
the fact that MERS does not have a financial
interest in the loans, which, according to
the plaintiffs, renders MERS's status as a
beneficiary a sham. MERS is not involved in
originating the loan, does not have any right
to payments on the loan, and does not service
the loan. MERS relies on its members to have
someone on their own staff become a MERS
officer with the authority to sign documents
on behalf of MERS. . . . As a result, most
of the actions taken in MERS's own name are
carried out by staff at the companies that
sell and buy the beneficial interest in the
loans.

Cervantes, __ F.3d __, 2011 WL 3911031, *2.

V.      CONCLUSION.

        For the foregoing reasons, the Motion is GRANTED, and

the Complaint is DISMISSED with leave to amend as to specific

counts, as explained above.  No later than November 15, 2011, the

Pugals may file an Amended Complaint attempting to cure the

identified deficiencies.  Although the Pugals may proceed pro se,

the court encourages them to attempt to get an attorney to

represent them.

        If the Pugals choose to file an Amended Complaint, they

must clearly state how each named Defendant has injured them.  In

31

other words, they should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief. The Pugals should not include facts that are not directly relevant to their claims. Failure to file an Amended Complaint by November 15, 2011, will result in the automatic dismissal of this action as to all Defendants.

The Pugals are also notified that an Amended Complaint supersedes the prior Complaint and must be complete in itself, without incorporating by reference any prior or superseded pleading. See, e.g., King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted). Any Amended Complaint must stand on its own and may not assert against a Defendant any claim that has been dismissed with prejudice with respect to that Defendant.

The Pugals are further reminded that any Opposition to a Defendant's motion is due 21 days before the hearing for that motion. See Local Rule 7.4 ("An opposition to a motion set for hearing shall be served and filed not less than twenty-one (21) days prior to the date of hearing."). Notwithstanding the Pugals' failure to file an Opposition to MERS's motion to dismiss, the court is granting them leave to amend their Complaint. However, if they fail to file a written Opposition to

any subsequent motion, the court may assume the motion is unopposed and grant the motion.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, September 21, 2011.



                                    /s/ Susan Oki Mollway
                                  _____

                                  Susan Oki Mollway
                                  Chief United States District
                                  Judge

Pugal v. ASC, Civ. No. 11-00054 SOM/KSC; ORDER GRANTING DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS' MOTION TO DISMISS COMPLAINT